# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>UVALDO MALDONADO-ALARCON,<br><br>Defendant. | Case No. 2:14-cr-00150-BLW<br><br>MEMORANDUM DECISION AND ORDER |

The Court has before it Defendant Ulvaldo Maldonado-Alarcon's Appeal to District Court of Magistrate Judge Dale's Order of Detention entered in this action on August 19, 2014. (Dkt. 17).

## BACKGROUND

On July 13, 2014, Defendant was stopped by an Idaho State Police Trooper for a minor traffic violation. *Compl.,* 2, Dkt. 1. The trooper found drug paraphernalia and marijuana in Defendant's car, and arrested him. *Id.* The U.S. Border Patrol reviewed Defendant's immigration records and determined that he had been removed from the United States several times without permission. *Id.* at 3-4.

On July 22, 2014, a federal grand jury indicted Defendant, alleging that he had illegally reentered the United States after being deported to Mexico in violation of 8 U.S.C. § 1326(a) and (b). Following Defendant's initial appearance, the Government

moved to detain him (Dkt. 6), contending that Defendant is a risk of flight and that no combination of conditions will adequately assure the presence of Defendant at the trial.

A hearing on this matter was held on August 19, 2014, before United States Magistrate Judge Candy W. Dale. At the conclusion of the hearing, Judge Dale ordered Defendant detained, and Defendant appealed.

## ANALYSIS

1. **Standard of Review**

A person detained by order of a Magistrate Judge may file a motion for revocation or amendment of the order with the District Judge presiding over his case. 18 U.S.C. § 3145(b). The motion shall be determined promptly. *Id.* The procedures for review of the detention order under 18 U.S.C. § 3145(b) are governed by Federal Rule of Appellate Procedure 9. *U.S. v. Fernandez–Alfonso*, 816 F.2d 477, 478 (9th Cir.1987). "Rule 9(a) requires that the district court state in writing the reasons for the action taken when it enters an order refusing or imposing conditions of release." *Id.* (Citing Fed. R.App. P. 9).

The District Judge must review the Magistrate Judge's decision de novo. *U.S. v. Koenig*, 912 F.2d 1190, 1193 (9th Cir.1990). But the "court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Id.* Still, the District Judge "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* The District Judge has discretion to conduct a hearing, but a hearing is not required. *See e.g., U.S. v. Spears*, 2010 WL 2427439 (N.D.Ind.2010); *U.S. v. Baghdasaryan*, 2010 WL 2545993 (D.Kan. 2010); *U.S. v. Baker*, 703 F.Supp. 34

(N.D.Tex.,1989). In the end, the District Judge must make its own de novo determination of the facts and of the propriety of detention. *Koenig*, 912 F.2d at 1193.

2. **Proceedings Below**

During the detention hearing, Judge Dale admitted four government exhibits: (1) a criminal judgment establishing that in March 2013, Defendant was convicted in the United States District Court of Arizona for Illegal Entry into the United States; (2) a judgment establishing that in February 1998, Defendant was convicted in United States District Court of Arizona for Illegal Entry; (3) a State of California complaint and abstract of judgment establishing that in December 1999, Defendant was convicted for unlawfully possessing methamphetamine, a felony; and (4) a pretrial services report recommending detention based upon Defendant's immigration status and prior criminal history.

Supervisory Border Patrol Agent Tom Watts testified during the detention hearing. He confirmed that Defendant had been removed or deported from the United States on six prior occasions, and had been apprehended on another occasion attempting to cross the U.S. Border illegally from Mexico. He also testified that, if the Court released Defendant, the Immigrations Customs Enforcement agency ("ICE") would take him into custody on an immigration detainer and remove him within weeks. Watts stated, in response to a question from Judge Dale, that he believed Defendant was a risk of flight and nonappearance because of his immigration history.

Judge Dale found that Alarcon was a risk of non-appearance because of the ICE hold and his likely removal from the United States if released. She did not find that he was a

flight risk based on his multiple prior removals, illegal entry convictions, and other factors. Judge Dale ordered Defendant detain.

3. **Defendant's Appeal**

Defendant argues that an ICE detainer, without more, is insufficient to rebut the presumption of pretrial release. The Court, however, does not have to decide this issue. Instead, it concludes that other factors, in addition to the ICE detainer, support the finding that there are no conditions or combination of conditions that will reasonably assure the appearance of Defendant for trial.

As explained above, the Court will consider the detention issue *de* novo. The Bail Reform Act of 1984 sets forth the procedure for releasing or detaining an arrested person pending trial. It requires the Court to determine whether any condition or combination of conditions will reasonably assure that the arrested person is not a flight risk or a risk to the safety of any other person or the community. 18 U.S.C. § 3142(f). In making its determination, the court must consider a number of factors, which are: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings ; (4) the person's probationary status; and (5) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

In a case such as this one, where the nature of the crime does not invoke the statutory presumption of detention, a defendant should be released and in only rare cases be denied release. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Further, that a defendant is an alien may be taken into account, but alienage does not by itself "tip the balance either for or against detention." *Id.* (citation omitted). In making a release determination, "doubts regarding the propriety of release are to be resolved in favor of defendants." *Id.*

Although the ultimate concern of the statute is to ensure that a defendant not be released if he poses a serious risk of flight or a danger to the community, the language of the statute focuses on whether there are conditions of release that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). If no such conditions are available, Defendant must be detained; if such conditions can be imposed, Defendant must be released.

Applying the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that there are no conditions of release that will reasonably assure the appearance of Defendant. Defendant is a citizen of Mexico, and an individual who most recently entered the United States unlawfully and resided in another district (Western District of Washington). Govt. Ex. 4 p. 2; 18 U.S.C. § 3142(g) (2014). According to the testimony of Supervisory Agent Watts, Defendant has been removed to Mexico six times, from three different states: Arizona, California, and Texas. These removals occurred in September 1996, February 1998, August 2000, March 2003, August 2013, and November 2013. The two 2013 removals took place months after Defendant's apprehension,

conviction, and incarceration for illegal entry in the District of Arizona. Govt. Ex. 1 (stating that Defendant was convicted on March 13, 2013). This was his second conviction for illegal entry in federal court. *See* Govt. Ex. 2. This history indicates that Defendant has established a pattern of ignoring the immigration laws of the United States and an ability to avoid detection while doing so.

Other factors favor detention. Defendant owns no property here. He cannot maintain lawful employment because of his alien status. He has documented contact with multiple states. The case against Defendant is very strong since there is evidence that he has been previously deported on multiple occasions. Also, the risk that he will flee is heightened by the potential sentence in this case – up to ten years if convicted. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (holding that "[c]onsideration of the nature of the offenses charged involves consideration of the penalties").

These factors alone justify detention, even without consideration of the ICE detainer and Defendant's likely, imminent removal. However, this conclusion is bolstered upon considering the ICE detainer and Defendant's likely, imminent removal. If released, Defendant would be immediately detained, removed by ICE within weeks, and unavailable for his criminal court hearings.

Under the provisions of 8 U.S.C. §§ 1226(c), ICE is required to detain during removal proceedings any deportable alien who has been convicted of certain denominated crimes. *Demore v. Kim*, 538 U.S. 510, 517-518 (2003). This is because Defendant has multiple prior removals, a felony drug conviction, and outstanding orders of removal against him. *Id. See also* 8 U.S.C. § 1231(a)(2) (2014). And because

Defendant has previously been removed from the United States and is subject to a reinstated removal order, ICE must remove him after it obtains custody. 8 U.S.C. § 1231(a)(5) (2014). Even "[p]arole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal." 8 U.S.C. § 1231(a)(4)(A) (2014). Significantly, the statute specifically bars pre-removal judicial or administrative review, stating plainly that "the prior order of removal . . . is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry" *Id.*

While the Court does not find the fact of the ICE detainer to be dispositive, it is one factor that the Court finds weighs in favor of detention. This fact – that Defendant will be detained by ICE and quite possibly removed before trial – substantially decreases the likelihood that any condition or combinations of conditions of release will reasonably assure his presence for further proceedings.

In balancing all of these factors, the Court concludes by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure the appearance of Defendant for trial. As discussed above, a decision by the Court to grant Defendant pre-trial release will result in his being detained by ICE authorities, his prompt removal to Mexico and his never standing trial. Moreover, even if ICE elects to ignore the provisions of 8 U.S.C. § 1226 and foregoes detaining Defendant, it seems unlikely that he would choose to remain here and stand trial. Therefore, 18 U.S.C. § 3142(e) mandates that Defendant be detained pending trial.

# ORDER

IT IS ORDERED that Defendant Ulvaldo Maldonado-Alarcon's Appeal to District Court of Magistrate Judge Dale's Order of Detention entered in this action on August 19, 2014 (Dkt. 17) is DENIED.

DATED: September 29, 2014

B. Lynn Winmill  
Chief Judge  
United States District Court